# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No.: 16-cr-00129-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**1.  VINCENT SCOTT MATHEWS**,

    Defendant.

---

**UNITED STATES' EXPERT NOTICE AND RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY REGARDING GPS COORDINATES OR IN THE ALTERNATIVE FOR A DAUBERT HEARING**

---

The United States of America, by and through Acting United States Attorney Robert C. Troyer and Assistant United States Attorney Garreth Winstead, hereby responds to the defendant's Motion to Exclude Expert Testimony Regarding GPS Coordinates or in the Alternative for a Daubert Hearing (ECF No. 40), filed September 26, 2016.  The United States also provides expert notice pursuant to the Court's order of September 29, 2016.  (ECF No. 52.)

**PROPOSED EXPERTS, TESTIMONY, AND QUALIFICATIONS**

**I.    Jim Buck, Senior Product Manager, BI Incorporated**

Absent stipulation by the parties, the United States intends to call Jim Buck to testify regarding the Global Positioning Satellite ("GPS") coordinates from the defendant's GPS location monitor at certain times germane to the charges in the case.

The United States, as noted in the defendant's motion, has previously provided timely notice regarding Mr. Buck's qualifications and the location data that would form the matter of Mr. Buck's testimony.  (ECF No. 40 at 2.)

Mr. Buck studied electronics at the Ohio Institute of Technology, receiving a bachelor's degree in 1976.  He then worked in technical product manufacturing and supervision with Storage Technology for seven years.  He began work at BI in 1983 as a field services manager, involved with installation, training, and troubleshooting electronic monitoring systems.  Mr. Buck's role at BI expanded to include development and testing of new products.  He has continued experience and expertise in the design, functionality, and manufacturing of technical products including the GPS location monitoring units in this case.  Mr. Buck has previously been certified as an expert in GPS monitoring technology, including in November of 2009 before United States District Judge Wiley Y. Daniels in *United States v. Hines et al.*, 08-cr-00165-WYD.  Mr. Buck's summary of qualifications is attached hereto as exhibit 1.

Mr. Buck will testify about the general details of how GPS monitoring functions. He will provide information about the history of GPS technology, including the establishment of the NAVSTAR system, and the expansion of GPS technology in military and civilian uses.  He will explain how GPS receivers communicate to multiple satellites, and how if a minimum of three satellites are in communication with the device, the device can calculate latitude and longitude positions over time.  He will explain that there are 24 satellites in orbit which send continuous signals for the purpose of geo-location.  He will discuss different types of devices which utilize GPS technology, including Autonomous GPS, Assisted GPS, and Advanced Forward Link Trilateration,

and will explain their differences. He will explain how the particular device in this case, the Exacutrack Active Tracker (ETAT). That device is an assisted device with standard GPS. He will explain that the more points of reference used by a device, such as visible satellites or other points of reference, the more accurate the location calculation of the device is likely to be. He will explain the potential sources for errors in GPS device location calculations. He will also apply the explanatory principles to the device in this case, and will discuss the likelihood of errors and the expected accuracy of the readings in this case, based on the particular circumstances, such as the number of satellites in communication with the device and any possible interference based upon the particular location. Finally, he will provide the latitude and longitude provided by the device for the particular dates and times relevant to the events in the case. That latitude and longitude data will be presented in the form of an image of a map with the particular location marked, as displayed by either internet mapping service Google Maps or Bing Maps. He will explain that for each reading the device in question was within a certain range of the location given, estimate how wide the range is for each location, and explain what the chances of erroneous location data is for each location. The GPS location data that forms the primary content is not attached hereto because of its length, but has been previously provided in discovery to the defendant.

**II.     Susan Berdine, DNA Technical Lead, DPD Crime Laboratory**

The United States may call Susan Berdine to testify regarding the testing completed on a DNA sample taken from the pistol found in 1538 N. Uinta Street during execution of a search warrant. Ms. Berdine received a bachelor of science with honors in Biochemistry and Molecular Biology from Pennsylvania State University in 2001, a

Master's of Science degree in forensic science from the University of Illinois at Chicago in 2003, and has completed additional coursework and training in the areas of genetics and DNA analysis. She has years of experience in forensic DNA analysis, including work at the Denver Police Department Crime Laboratory since 2004. Ms. Berdine's CV is attached hereto as exhibit 2.

Ms. Berdine would testify that after analysis of the DNA sample obtained from the firearm in question, that there is a mix of DNA contributors of at least five people, and that there are three primary contributors and at least two minor contributors. She will testify that there is very strong support for the conclusion that Ronnette Mathews, the defendant's wife, is one of the major contributors. She would also testify that due to the complexity of the sample, she can exclude the defendant as one of the major contributors, and is unable to either confirm or eliminate the defendant as a minor contributor. Ms. Berdine would testify that in an initial test she arrived at a total of at least four contributors, and that she assessed that there was a moderately strong probability that the defendant was a contributor. She would testify that upon re-evaluation of the testing, there were at least five contributors, and that since the defendant was not one of the major contributors to the DNA profile the scientific and statistical guidelines she follows do not allow for an affirmative statistical finding with regard to the defendant. Ms. Berdine's amended report is attached as exhibit 3.

### III. Mark Feltz, Special Agent, Alcohol, Tobacco, Firearms and Explosives ("ATF")

ATF Special Agent Mark Feltz will be called to offer expert testimony regarding the interstate nexus of the Ruger, model LC380, .380 caliber pistol, with serial number 326-26651, and seven rounds of .380 caliber ammunition. As reflected in the attached

qualifications and summary of testimony, Agent Feltz, based upon his research, will testify that the firearm and ammunition were not manufactured in the state of Colorado, and therefore traveled in and/or affected interstate and/or foreign commerce.

Agent Feltz's opinions are based upon his education, experience and training. Agent Feltz's qualifications are contained in his statement of qualifications, which is included within his report. The bases for his opinions are also contained within that report, which is attached hereto as exhibit 4.

## APPLICABLE LAW

As outline herein, admission of the proffered expert testimony is supported by the Federal Rules of Evidence. Moreover, the case law of the Tenth Circuit also supports the admission of such testimony. The proffered opinions are both reliable and helpful to assist the triers of fact in the interpretation of evidence which is related to a fact in issue.

## I. THE PROFFERED EXPERT TESTIMONY IS ADMISSIBLE AT TRIAL.

Through a series of cases beginning in 1993, the Supreme Court held that federal district courts should serve in the capacity of a gatekeeper to ensure that scientific testimony or evidence which is offered for admission under Federal Rule of Evidence 702 is both relevant and reliable. *See Daubert v. Merrell Dow Pharm. Inc.,* 509 U.S. 579, 592-93 (1993); *General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997). In a third case, *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999), the Court clarified that this gatekeeping role applies not only to scientific knowledge, but also to "technical" and "other specialized" knowledge. *See also, United States v. Lauder*, 409 F.3d 1254, 1263 (10th Cir. 2005).

Admissibility of expert testimony has become a highly specialized inquiry within the District of Colorado. *See e.g., United States v. Crabbe*, 556 F.Supp. 2d 1217 (D. Colo. 2008). The Government does not concede that the exhaustive method of analysis set forth in *Crabbe* is necessary or legally appropriate in all cases with all experts. However, in an abundance of caution, the government provides this preliminary brief regarding its theory of admissibility concerning the proposed expert testimony, with request for leave to supplement should challenges be filed in relation to such testimony. As outlined herein, the government will comply with the notice requirements, as contained in Rule 16 of the Federal Rules of Criminal Procedure, and the proffered expert testimony is admissible pursuant to Federal Rules of Evidence 701, 702, 703, 704 and/or 705.

    A.    *THE GOVERNMENT IS COMPLYING WITH THE NOTICE AND DISCOVERY PROVISIONS OF RULE 16 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.*

The Government's notice of expert testimony is filed in accordance with the Federal Rules of Criminal Procedure which state:

> (F) **Reports of Examinations and Tests.** Upon a defendant's request, the government must permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if:
>
> (i) the item is within the government's possession, custody, or control;
>
> (ii) the attorney for the government knows--or through due diligence could know--that the item exists; and
>
> (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.
>
> (G) **Expert witnesses**.--At the defendant's request, the government must give the defendant a written summary of any

6

>testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) and the defendant complies, the government must, at the defendant's request, give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(F) and (G).

The Government has disclosed the *curriculum vitae* or summary of qualifications of each expert who is expected to testify at trial. The government has also disclosed reports related to the analyses in question. Additional reports, if any, will be disclosed upon receipt. Thus, the government has complied with the discovery and inspection provisions associated with the admission of expert testimony.

> B. *THE PROFFERED TESTIMONY IS ADMISSIBLE UNDER FEDERAL RULES OF EVIDENCE 701, 702, 703, 704 and/or 705.*

It is occasionally difficult to distinguish whether opinion testimony is truly "expert" testimony under Fed. R. Evid. 702, or whether it is opinion testimony as provided by a lay witness under Fed. R. Evid. 701. However, opinions such as the ones proffered herein fit squarely under Rule 702.

> 1. General Principles Of Federal Rule Of Evidence 702:

The foundational requirements for the admission of expert opinions are set forth in Federal Rules of Evidence, which provide:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of and opinion or otherwise if:

>   (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>   (b)   the testimony is based on sufficient facts or data;
>
>   (c)   the testimony is the product of reliable principles and methods; and
>
>   (d)   the expert has reliably applied the principles and methods to the fats of the case.

Fed. R. Evid. 702

As outlined in *Crabbe*, 556 F. Supp. 2d at 1217-1226, pursuant to the 2000 revisions of Rule 702, it is no longer sufficient merely to qualify an individual as an expert, and thus allow that individual to offer any opinion falling within the scope of his or her expertise. Now, in addition to establishing the qualifications of the proffered expert, the proponent of such testimony must also offer a factual foundation which shows: 1) that the method(s) or principle(s) used by the witness are reliable, 2) that the witness used sufficient facts or data as required by those methods or principles, and 3) that the witness properly applied the analytical method(s) to those facts and data. *Id.* The proponent of the expert testimony has the burden of proving these foundational requirements by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592 n.10 (1993). "[T]he proponent need not prove that the opinion is objectively correct … but only that the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221 (internal citations omitted).

i.   Qualifications

Rule 702 requires that a witness be qualified as an expert by virtue of their, "knowledge, skill, experience, training, or education". Fed. R. Evid. 702.  While any of these qualifications may be sufficient, they are considered in relation to the particular opinion or testimony which is offered.  "Indeed, in some fields, experience alone is the 'predominant, if not sole, basis for a great deal of reliable expert testimony.'" *United States v. Dysart at 1252*, *quoted in Crabbe* 556 F. Supp. 2d at 1221.

ii.   Methodology

Once a witness is deemed to have the requisite background, the next question is whether the principle or method used by that witness is reliable.  In other words, how did the witness reach his or her conclusion, and was that methodology reliable?  As articulated in *Daubert,* 509 U.S. at 593-4*,* when determining whether a methodology is scientifically valid, the following inquiries are probative: 1) can the procedure be validated or falsified?; 2) has the method been subject to peer review or publication?; 3) does the method have known or potential rates of error?; and 4) is the methodology generally accepted within the scientific community?  *See also, Crabbe* 556 F. Supp. 2d at 1222.  These factors may also be applicable in assessing the reliability of non-scientific expert testimony.  *See e.g. Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 150-51 (1999).  Once it is determined that the methodology is generally reliable, any suggestion that more certainty is required goes to weight as opposed to admissibility. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2004) cited in *Crabbe* 556 F. Supp. 2d at 1222.

          iii.      Sufficient Facts and Data

If an expert witness with an appropriate background uses a reliable methodology, then the next questions is whether they used sufficient facts or data, as required by that methodology, to produce a meaningful result. This analysis is quantitative, not qualitative, thus any inquiries into the quality of that data go to weight, not admissibility. *United States v. Lauder,* 409 F.3d 1254, 1264 (10th Cir. 2005) ("*Daubert* generally does not, however, regulate the underlying facts or data that an expert relies on when forming her opinion.") *cited in Crabbe,* 556 F. Supp. 2d at 1223.

          iv.      Proper Application Of The Scientific Method To Facts And Data

If an appropriate expert uses a scientifically reliable technique, and enters sufficient data as required by that scientific method or principle, then the final question is whether they have properly applied the technique to the facts and data. As outlined in *Crabbe:*

> In assessing the reliability of the witness' application of facts to methodology, the Court considers a variety of factors including, but not limited to, the following: (i) whether the expert employed the same degree of intellectual rigor in formulating the opinion as he or she would be expected to employ in his or her own professional life; (ii) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion (i.e., whether there is too great an analytical gap between the data and the opinion proffered); and (iii) whether the expert adequately accounted for obvious alternative explanations. *See generally Kumho*, 526 U.S. at 152, 119 S.Ct. 1167; *General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

*Crabbe*, 556 F. Supp. 2d at 1223-24.

**ARGUMENT**

**I.     Response to the Defendant's Motion to Exclude**

The defendant seeks to exclude the expert testimony of Jim Buck. The Defendant argues that Mr. Buck's opinions were not disclosed to the defendant in a timely fashion. Specifically, the defendant argues that the lack of response from Mr. Buck to an inquiry from the defendant amounts to a failure to disclose Mr. Buck's expert opinion testimony.

The defendant does not argue that he did not receive Mr. Buck's qualifications, background information about GPS technology, or the latitude and longitude data from relevant time periods that reflect the location of the GPS unit. Instead, after receiving that information, defense counsel created a verbal summary describing the locations arrived at by entering the latitude and longitude data into Google Maps, and then asked Mr. Buck to opine on whether those verbal descriptions were accurate as to the latitude and longitude coordinates.

The fact that Mr. Buck did not reply to defense counsel before the expert deadline is not a failure to disclose his opinion. In point of fact, both Mr. Buck and the United States agree as to the general accuracy of the defendant's verbal descriptions of those locations, and defense counsel and counsel for the United States have used internet-based map software together to arrive at depictions of the latitude and longitude coordinates provided by Mr. Buck, about which depictions there appear to be no grounds for dispute.

To the extent that the defendant wishes to engage in questioning Mr. Buck about the accuracy of the latitude and longitude coordinates, or the compatibility of those

coordinates with other evidence in the case, such questioning is appropriate material for cross examination at trial, but is not an essential part of the United States' duty to disclose Mr. Buck's opinion. Additionally, any purported inconsistencies between the location data and other evidence in the case is proper with regard to the weight of that evidence or potentially to the appropriate foundation for the evidence, but do not create a need for a hearing under *Daubert*.

Mr. Buck has already been qualified as an expert in GPS technology in the Federal District of Colorado, as noted above, and the defendant does not question Mr. Buck's qualifications. The defendant does not dispute that the testimony is relevant to the case. As far as the reliability of GPS technology, courts have held not only that GPS technology is reliable and within the common experience of the populace, but even that a court does not err to take judicial notice of the reliability of GPS technology without the need for expert testimony. *United States v. Brooks*, 715 F.3d 1069, 1078 (8th Cir. 2013) ("We cannot conclude that the district court abused its discretion in taking judicial notice of the accuracy and reliability of GPS technology. Commercial GPS units are widely available, and most modern cell phones have GPS tracking capabilities. Courts routinely rely on GPS technology to supervise individuals on probation or supervised release, and, in assessing the Fourth Amendment constraints associated with GPS tracking, courts generally have assumed the technology's accuracy.") Courts have also allowed lay witness testimony to establish a foundation for the admission of GPS data without expert testimony. *See United States v. Espinal-Almeida*, 699 F.3d 588, 608-12 (1st Cir. 2012); *United States v. Thompson*, 393

F.App'x. 852, 858-59 (3d Cir. 2010). Finally, the defendant does not argue that any unfair prejudice would result from allowing Mr. Buck's testimony.

Accordingly, the United States respectfully requests that the Court deny the defendant's motion to exclude Mr. Buck's testimony, and rule that Mr. Buck's testimony is admissible without the need for a *Daubert* hearing.

## II.     Other Proffered Expert Testimony

The United States has identified expert witnesses whom it may to call at trial, Forensic Analyst Susan Berdine and Special Agent Mark Feltz. Under the foregoing criteria, their testimony is admissible because the Government has provided detailed summaries of their testing or research procedures and conclusions, all of which demonstrate the admissibility of their proffered testimony. Their *curriculum vitae* or statement of qualifications contain an outline of their qualifications to serve as expert witness in their respective fields. Moreover, in reaching their conclusions, Ms. Berdine used scientifically valid methodologies are generally accepted in the scientific community, and Agent Feltz used examination and research methods generally accepted within his field of expertise. Finally, both obtained sufficient facts and data, and properly applied the methodology to that data, in order to obtain valid results that will withstand the rigor of academic scrutiny.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's motion to exclude expert testimony, and hold that Jim Buck, Susan Berdine, and Mark Feltz are qualified to testify as experts in their respective

fields, and that the proffered testimony is admissible under the applicable rules governing expert testimony.

Dated:  September 21, 2016.

Respectfully submitted,

ROBERT C. TROYER
Acting United States Attorney

By: */s/ E. Garreth Winstead*
E. GARRETH WINSTEAD
Assistant United States Attorney
1225 17th Seventeenth St., Suite 700
Denver, Colorado 80202
Phone:  (303) 454-0100
Fax:  (303) 454-0403
E-mail:  Garreth.Winstead@usdoj.gov
Attorney for the United States

15

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 21th day of September, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

*/s/ E. Garreth Winstead*
E. GARRETH WINSTEAD
Assistant United States Attorney
1225 17th Seventeenth St., Suite 700
Denver, Colorado 80202
Phone:  (303) 454-0100
Fax:  (303) 454-0403
E-mail:  Garreth.Winstead@usdoj.gov
Attorney for the United States

15